[No. D007303. Fourth Dist., Div. One. Jan 31, 1989.]

JANIS O'DELL, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

## COUNSEL

Patrick J. Thistle and Thistle & Krinsky for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson and Eugene P. Gordon Chief Deputy City Attorneys, and Steven R. Gustavson, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

**WIENER, Acting P. J.**—Janis O'Dell lost her job as a police officer when she failed to successfully complete the required 12-month probationary period.[1] O'Dell claims she completed probation before the City of San Diego (City) and Police Chief William B. Kolender notified her that her period of probation had been extended and argues she was therefore entitled to a civil service hearing before termination. The trial court rejected O'Dell's argument and denied her petition for writ of mandamus. We conclude the City was required to act on the police department's request to extend probation before the probationary period expired unless it notified O'Dell the request was pending and demonstrated good cause for delay. We therefore reverse the order in order for the trial court to determine whether the City's delay was justified.

### FACTUAL AND PROCEDURAL BACKGROUND

The City hired O'Dell as a Police Officer I on June 26, 1985, following her graduation from the police academy. During the ensuing 12 months of probationary status, O'Dell sustained a work-related injury to her right leg

---

[1] The City maintains O'Dell was not terminated but returned to her previously held classification of dispatcher when she failed probation. The question of whether O'Dell was "terminated," "demoted" or voluntarily returned to her former position is not relevant to the issues presented in this appeal.

and a nonindustrial back injury. O'Dell missed or worked in modified duty status for a total of 155 days as a result of this combination of injuries. She served the remainder of the probationary period in full-duty status.

On June 2, 1986, more than two weeks before the expiration of the twelve-month probationary period, the police department requested that O'Dell's probationary period be extended to compensate for the period during which she had missed work or served in modified duty status. A copy of the request was not mailed to O'Dell. She alleges she was unaware the request had been made.

O'Dell received a satisfactory monthly evaluation while working in full-duty status in June 1986. She alleges she achieved permanent employment effective June 25, 1986. O'Dell admits, however, that she received a copy of the City's July 3, 1986, decision to extend her probationary period to February 24, 1987.

The police department notified O'Dell on August 6, 1986, that she was "required to maintain a level of physical fitness high enough to pass [the PROD physical agility] test each month during [her] probationary period." It was suggested that O'Dell continue the therapy sessions to increase leg strength, start an aerobic workout to include two 3-mile jogs at least three times a week, and practice wind sprints. The memo stated that O'Dell's failure to successfully complete the next scheduled test would result in a recommendation for her termination. O'Dell alleges that the physical training proposed by the police department was in direct contradiction with restrictions placed on her by the physician treating her for the leg injury.

On September 3, 1986, the police department changed O'Dell's earlier "satisfactory" performance evaluation to "unsatisfactory" due to her failure to pass a physical agility test conducted in July 1986. O'Dell was under a doctor's care for the September 1985 leg injury at the time she failed the physical agility test.

Based on the September 3, 1986, evaluation, the City terminated O'Dell from her position as a police officer on September 15, 1986, effective September 17. The City denied O'Dell's request for a civil service hearing to address the issues relating to her termination.

O'Dell unsuccessfully petitioned for a writ of mandamus seeking reinstatement to full duty as a Police Officer II, backpay and benefits. This appeal ensued.

DISCUSSION

■    As noted earlier, the police department made a *timely* request to extend O'Dell's probationary period. The question remains whether the City could *act* on that request after the expiration of the 12-month period of probation.

The personnel manual provides that "[e]very officer employed by a department shall be required to serve in a probationary status for *not less than* 12 months." (Italics supplied.) The policy basis for the probationary period is stated in the personnel manual: "The probationary period should properly be viewed as a significant portion of the testing process. It is important for each appointing authority to provide a new employee with training necessary to succeed. It is equally important to limit the evaluation of a new employee to those skills, abilities, and knowledges which are critical to performance." Only those who satisfactorily complete the probationary period attain permanent status.

In the case of an original appointment, the probationary period consists of one year of active duty. The personnel manual defines "Active duty": "F. *Clarification of 'Active Duty'* [¶] 1. In determining the length of a probationary period, extended periods of absence such as sick leave, industrial leave, . . . or limited assignments outside an employee's classification necessitated by injury or health conditions need not be considered as 'active duty.' [¶] 2. 'Extended periods' of such absence are defined as follows: . . . [¶] "b. Leave(s) of absence aggregating more than 42 calendar days in a one-year probationary period." The manual sets forth a procedure for extending the probationary period: "4. If a probationary employee has been absent for any . . . extended period, as defined in F, 1 and 2 above, the appointing authority may request that the length of the employee's probationary period be extended to reflect only 'active duty' time. This request shall be in writing to the Personnel Director *at least two weeks prior to the end of the original probationary period*. Upon approval of the request by the Personnel Director, the Personnel Department will notify the appointing authority and the employee of the adjusted ending date of the employee's probationary period." (Italics supplied.)

The problem of *when* the City must act on a timely request to extend the probationary period is created because the personnel manual does not expressly provide for the time within which the City must act. Obviously had the City intended to retain the power to act after the 12 months it could have so provided. Lacking express language to this effect it is reasonable to infer that the last day on which the City should be able to act on a request to extend a probationary term is the end of that term. A contrary interpre-

tation would render meaningless the requirement of the two-weeks notice. This interpretation is also consistent with the need for administrative certainty. From both the employer's and employee's perspective it is preferable to have a specific date on which the employee's probationary status will end. An administrative entity works more efficiently when those persons within the bureaucratic structure perform their assigned tasks within the time constraints imposed by internal regulations. Effective organizational activity is predicated on defined duties. We are all subject to the tendency to put off to a later time that which should be done today.

Conversely, a probationary employee who is not informed within the 12-month probationary period that the City intends to extend his or her probationary status will assume that expiration of the probationary period is equivalent to having satisfactorily performed on probation. Being told otherwise sometime after that date is, to say the least, a rather shocking event with a profound negative effect on the employee's morale and the potential for resultant lessening of morale on others in the department. Thus our decision here precludes granting the City an open-ended time within which it can act and serves to implement the reasonable expectations of the probationary employee.

Having reached this conclusion we are nonetheless reluctant to interpret the 12-month probationary period as being a jurisdictional time limit which would prevent the City from acting on a timely request to extend probation in every case. There may be circumstances which justify an exception.

The entire probationary period must be considered as a significant part of the testing process for new employees. It is possible there may be events within the last two weeks which will be crucial to a department's decision to extend probation. There may also be cases in which the City cannot rule on an extension request within that period due to the absence of the decision-makers or other extenuating circumstances in personnel services. In these circumstances, and subject to notifying the employee within the 12-month probationary period that an extension request is pending, the City should be able to offer justification for its delay. This procedure is fair to both parties. The City has the burden (1) to inform the employee he or she may not attain permanent status as scheduled and (2) to show cause why it did not act before probation expired. This approach also fairly places the burden on the City because the City, not the employee, has access to the information justifying an extension of the time within which it can act.

Applying that rule here there is nothing to show the City acted in bad faith. Its decision was reached only eight days after the expiration of the original probationary period. O'Dell and the City simply interpreted the

personnel manual differently. Accordingly, in this case the City's failure to notify O'Dell of the pending extension request should not bar it from presenting evidence on remand which would justify its failure to act before O'Dell's probation expired.[2]

## DISPOSITION

Order reversed with directions for further proceedings consistent with this opinion.

Todd, J., and Benke, J., concurred.

---

[2] Because of the result we reach in this case we do not address the alleged violation of Labor Code section 132a or the question of industrial retirement benefits.